# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 5, 2007

## STATE OF TENNESSEE v. ANDRECO BOONE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-06682     Chris Craft, Judge**

**No. W2006-01646-CCA-R3-CD  - Filed November 16, 2007**

The defendant,  Andreco Boone, appeals his conviction of aggravated robbery, a Class B felony.  He contends that the evidence was insufficient to support his conviction and that the trial court improperly admitted a photo spread during the trial.  After careful review, we affirm the judgment from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Lance R. Chism (on appeal) and Patricia Woods (at trial), Memphis, Tennessee, for the appellant, Andreco Boone.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Greg Gilbert, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant was convicted of aggravated robbery arising from his actions in robbing a Lenny's Sub Shop in Shelby County.  An agreed sentence was imposed of twelve years as a Range II, multiple offender.  At trial, the victim, who was the store manager of the Lenny's Sub Shop, testified that the defendant began working at the restaurant shortly after it opened in May 2004.  He said the defendant left his employment with the restaurant on December 31, 2004, after it was discovered that money was missing from the safe.  The victim testified that he arrived at work at approximately 8:00 a.m. on March 26, 2005, and began to prepare the restaurant for the day.  He said he heard a loud noise in the kitchen and discovered two men in the warehouse area of the building.  One of the men pointed a gun at him while the other man, the defendant, stood to the side of the gunman.

The victim said the man holding the gun was short and was wearing a red and black jacket, which was zipped up to his face, and a hat pulled down over his face. The victim did not recognize the gunman but did recognize the defendant, who was wearing blue jeans, white tennis shoes, and a zipped grey hooded sweatshirt with the hood covering his face. The gunman, who told the victim to put his hands on top of his head and to turn around, shoved the gun into his back. The defendant stayed behind the gunman but moved closer when the gunman put the gun into the victim's back. The gunman pushed the victim to the safe, which was located in the office, while the defendant trailed behind him. The victim was ordered to open the safe. While he was dialing the combination, the gunman held the gun to the back of his head. The defendant continued to stand in the office, where he touched the desk and the money trays.

The victim said that after he opened the safe, the gunman ordered the defendant to place the victim inside the walk-in refrigerator. The defendant grabbed the victim by the back of his shirt and dragged him backward toward the refrigerator while the gunman kept the gun pointed toward him. The defendant placed the victim inside the refrigerator and closed the door. The victim then heard them push the forty-pound stainless table against the refrigerator door. The defendant did not speak during the robbery. While inside the refrigerator, the victim called the police on his cell phone. He said that $2519.88 was taken from the safe. He picked the defendant out of a police photo spread on May 4, 2005.

Officer Ricky Davison of the Memphis Police Department testified that he was assigned to the crime scene investigation unit. He arrived on the scene of the robbery around 9:00 a.m. on the morning of the incident and proceeded to take photographs and look for fingerprints. He was unable to find any usable prints. Even though he found some smudges and partial impressions, none were usable.

Sergeant Michael Brown testified that he investigated the robbery of the Lenny's Sub Shop. He said that the victim told him that the defendant was one of the men involved in the robbery. Sergeant Brown prepared a photo spread for the victim to review, and the victim immediately chose the defendant from the photo spread. The victim told Sergeant Brown that he was positive the defendant was one of the robbers but was unable to identify the gunman.

The jury returned a verdict of guilty to the indicted offense of aggravated robbery, from which the defendant appeals.

Analysis

On appeal, the defendant contends that the evidence presented at trial was insufficient to support his conviction for aggravated robbery. When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence,

circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. Id.

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

The defendant was found guilty of aggravated robbery. Robbery is defined as the intentional and knowing theft of property from the person of another by violence or putting the person in fear. Tenn. Code Ann. § 39-13-401(a). Aggravated robbery is a robbery accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon or where the victim suffers serious bodily injury. Tenn. Code Ann. § 39-13-402(a).

Specifically, the defendant argues that his conviction should not stand because the victim was not a credible witness or, alternatively, that the evidence only supports a finding of facilitation. First, we consider the issue of credibility. It is well settled that the trial court is responsible for resolving questions of witness credibility. In State v. Grace, the Tennessee Supreme Court stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

The defendant concludes that no reasonable jury could have believed that he was one of the men responsible for the robbery because there was no physical evidence linking him to the crime. However, he has not met his burden of showing why the evidence was insufficient. The evidence produced at trial, when viewed in the light most favorable to the State, reflects that the defendant and an accomplice robbed the victim at gunpoint. They forced the victim into the office and had him open the safe where they took the money. The defendant then forced the victim into the refrigerator and pushed a table against the door before retreating with the stolen money. The victim testified that

the gun was pointed at him or touching him during most of the robbery. The defendant has not met his burden of demonstrating that the victim's testimony was not credible.

Next, the defendant contends that the evidence, at most, supported a conviction for facilitation. "A person is criminally responsible for an offense committed by the conduct of another if, [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402 (2). The defendant argues that, because he never possessed the gun during the robbery, he was a follower rather than a leader. The testimony at trial demonstrated that the defendant did not speak during the robbery but that he was responsible for putting the victim into the refrigerator.

Again, we consider State v. Grace, where the court stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d at 476. The evidence reflects that the defendant's actions satisfy the definition of aggravated robbery and support the jury verdict. He acted with intent to deprive the victim of personal property; he exercised control over the property without the victim's consent; and he accomplished the theft through fear and violence as he forced the manager into the refrigerator and stayed close to the gunman during the robbery. We conclude that a rational trier of fact could have found the essential elements of aggravated robbery and, therefore, we affirm the judgment from the trial court.

Next, the defendant argues that the admission of the photo spread was improper and amounted to plain error. However, he acknowledges that he did not object to its admission at trial. An objection was raised at trial to the use of the photo spread containing booking numbers, and that objection was sustained. The trial court did not allow the use of the term "booking number" because it would have been prejudicial. Despite the fact that no objection was raised at trial, the defendant asks this court to review whether the admission of the photo spread constituted plain error.

The State argues that, because the objection was not raised at trial or in the motion for new trial, it has been waived. A party is not entitled to relief if the party invited error, waived an error, or failed to take whatever steps were reasonably available to cure an error. See Tenn. R. App. P. 36(a), Advisory Commission Comments; State v. Smith, 24 S.W.3d 274, 279-80 (Tenn. 2000). Because the defendant did not object, we may only consider this issue if it amounts to plain error under Tennessee Rule of Criminal Procedure 52(b). To determine whether plain error exists, we must consider the following factors:
  (a) the record must clearly establish what occurred in the trial court;
  (b) a clear and unequivocal rule of law must have been breached;
  (c) a substantial right of the accused must have been adversely affected;
  (d) the accused did not waive the issue for tactical reasons; and
  (e) consideration of the error is "necessary to do substantial justice."

Smith, 24 S.W.3d at 282-83 (citing State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994).

All five factors must be established by the record before this court may recognize the existence of plain error, and complete consideration of the factors is not necessary when it is clear that at least one of the factors cannot be established. Id. Additionally, the plain error must have been of such great magnitude that it probably changed the outcome of the trial. State v. Adkisson, 899 S.W.2d at 641-42.

Here, the officer testified about the steps he took in compiling the photo spread. The defendant objected to the use of the master copy because it displayed the booking numbers of each person in the spread. The trial court ruled that the State could ask questions about the photo spread but would not allow the copy with the booking numbers to be shown to the jury because it showed that the defendant had been arrested in 2003. The trial court told the State not to talk about booking numbers.

The State argues, and we agree, that the defendant cannot show that all five factors have been met and cannot demonstrate that the mention of the booking numbers was of such great magnitude to change the outcome of the trial. While the use of the term "booking number" may have been error, it does not rise to the level of plain error; therefore, the defendant is entitled to no relief.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgment from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE